# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**TERRY BACH, JR.,**

        **Plaintiff,**

**-v-**

**SCOTT DRERUP, et al.,**

        **Defendants.**

**Case No. 3:11-cv-317**

**Judge Thomas M. Rose**

---

### ENTRY AND ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE (Doc. #54); GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. #37) AND TERMINATING THIS CASE

---

The Plaintiff in this matter is Terry Bach, Jr. ("Bach"). The Defendants are Kettering Police Officers Scott Drerup ("Drerup") and Paul Markowski ("Markowski"), John/Jane Doe(s) and the City of Kettering, Ohio. The Jane and John Does have not been identified and the City of Kettering has been dismissed pursuant to a Stipulation of Dismissal filed on November 10, 2011 (doc. #11). Thus, Drerup and Markowski remain as Defendants.

This matter is now before the Court on Defendants' Motion for Summary Judgment (doc. # 37) and Plaintiff's Motion To Strike (doc. #54). These motions are now fully briefed and ripe for decision.

Bach has brought five (5) causes of action as set forth in his First Amended Complaint ("FAC"). (Doc. #24.) Therein, Drerup and Markowski are sued individually and not in any official capacity.  (FAC ¶ 4.)

Bach's First Claim for Relief is for wrongful arrest and his Second Claim for Relief is for unlawful prosecution. Bach's Third Claim for Relief is for punitive damages and his Fourth Claim for Relief is for municipal liability. Bach's Fifth Claim for Relief is for retaliation for exercise of his first amendment rights. Since the City of Kettering has been dismissed and Bach's Fourth Claim for relief alleges municipal liability, Bach's Fourth Claim for Relief will not be further considered.

The relevant factual background will first be set forth. This will be followed by an analysis of Plaintiff's Motion To Strike, the legal provisions relevant to Defendants' Motion for Summary Judgment and an analysis of Defendants' Motion for Summary Judgment.

## RELEVANT FACTUAL BACKGROUND

### The Robbery

The Walgreens store at 2140 East Dorothy Lane, Kettering, Ohio was robbed at around 11:25 a.m. on August 21, 2009. (Deposition of Scott Drerup ("Drerup Dep.") 32, 35 Mar. 27, 2012**.)** The robbery was witnessed by Walgreens employees Jill Garress ("Garress"), Nicole Hughes ("Hughes") and Connie Peyton ("Peyton"). (Drerup Dep. Ex. 1.)

The suspect is described in the police report as a white male, 20 to 25 years old, 5'3" to 5'5" tall[1] with a thin mustache and barely visible goatee wearing a green sweatshirt, with the hood up, long blue jeans and sun glasses. (Id.) Also, the suspect stated that he had a gun and he displayed a knife. (Id.). The suspect demanded Oxycontin which was eventually given to him in a bag by Garress, the on-duty pharmacist. (Id.).  Finally, the witnesses said that the suspect was

---

[1]In her witness statement, Garress described the suspect as approximately 5'5" in height. (Drerup Dep. Ex. 5.) The other two witnesses did not include an estimated height in their witness statements. (Id.)

"scrunched over the counter and leaning up against the wall" and no one saw him standing straight up and down. (Drerup Dep. 223.)

The suspect was seen handling an object potentially bare-handed, but no effort was made to obtain fingerprints. (Markowski Dep. 40.) The case was assigned to Markowski. (Drerup Dep. 41.)

**Walls' Arrest and Interview**

On September 1, 2009, Drerup was asked by Detective Gary Schomburg ("Schomburg") to assist with making an arrest of Michelle Walls ("Walls"). (Drerup Dep. 43, Deposition of Gary Schomburg "(Schomburg Dep.") 15-16 May 9, 2012.)  Schomburg was investigating Walls for a purse theft and illegal use of credit cards. (Schomburg Dep. 10-13.)

Schomburg and Drerup went to 536 Hollendale Avenue in the City of Kettering and located Walls hiding in a bedroom closet. (Schomburg Dep. 17-18.)  Walls was arrested for theft and transported back to the Kettering Police Department for questioning. (Drerup dep. 47-48, Schomburg Dep. 18-19.)

Walls initially denied committing the theft offense or using the credit cards. (Schomburg Dep. 19.)  However, she eventually confessed to both crimes. (Id.)

During Walls' interrogation, Drerup asked Walls if she had any information concerning other crimes. (Drerup Dep. 55-56.)  Walls then admitted her knowledge of a pharmacy robbery in Kettering that occurred on August 21, 2009. (Drerup Dep. 54-56, Schomburg Dep. 20.)

Walls told the officers she would get Xanax from Bach who was also living on Hollendale Avenue. (Drerup Dep. 49-50; Schomburg Dep. 20.) Walls told the officers that she had gone over to Bach's house one night and he was acting "really paranoid." (Drerup Dep. 50.) She told the officers that Bach had a green hooded sweatshirt that he kept putting in the oven in

-3-

an attempt to try to catch it on fire. (Id.) She said he would then pull the sweatshirt out of the oven and stomp on it in the kitchen. (Id.) She also mentioned that Bach had a pair of shoes that he was talking about burying somewhere. (Id.)

Walls then completed a written Witness Statement regarding the robbery. (Schomberg Dep. 21; Drerup Dep. Ex. 5.) In the Witness Statement, Walls says that she went to Bach's house late at night and he had a sock full of oxycontins. (Drerup Dep. Ex. 5.) He gave her 2 or 3. (Id.) Bach also told Walls that he had robbed the Walgreens on Dorothy Lane with a knife. (Id.) Walls, again, said that she saw a green hoodie that Bach was trying to burn and a pair of gym shoes that he was going to bury. (Id.)

Walls was shown the video from the Walgreens robbery. (Drerup Dep. Ex. 2.) After viewing the video, Walls told Drerup and Schomburg that the suspect stands like Bach in the way he places his hands on his hips. (Id.) She also told them that the suspect had long fingers like Bach, and then said, "Wow that's definitely Terry." (Id.)

According to Drerup and Schomburg, no promises were made to Walls for this information. (Drerup Dep. 56, Schomburg Dep. 22.) Walls was arrested and taken to Montgomery County Jail where she was detained on the theft offense. (Schomburg Dep. 22.)

### The Initial Investigation of Bach

While Markowski was on sick leave, Drerup reviewed the case file on the Walgreens robbery to corroborate Walls' statements. (Drerup Dep. 57.) Drerup looked up Bach's criminal history which included 18 arrests. (Id.) Drerup was also able to view Bach's physical characteristics including his estimated age, height, weight, and build and a photo of Bach. (Id. at 66.) Drerup noted a difference in height of several inches between what the police report from the robbery said and what was in Bach's criminal history file. (Id. at 67-68.) Drerup also noted

-4-

similarities in that Bach was a white male, had brown hair and had a thin build. (Id.)

On September 2, 2009, Drerup prepared a photographic lineup which included a picture of Bach from 2008. (Id. at 72.) He showed this lineup to Garress and Hughes, neither of whom could identify Bach. (Id. at 75-76.) Both Garress and Hughes said they were scared at the time of the robbery and looked down instead of looking at the suspect's face. (Id.)

On September 3, 2009, Walls was interviewed a second time by both Drerup and Markowski. (Drerup Dep. 83-84.) Walls confirmed her earlier statements about Bach and provided additional context. (Id. at 84-85.) She told the officers that she had known Bach for about 5-6 months. (Id.) She also told the officers that she thought the Walgreens robbery had occurred on a Friday night several days before the date when she committed her theft. (Id.)

Walls also added a new story that Stephanie, Bach's sister, had told her that Bach took Stephanie's car, which Stephanie later denied. (Drerup Dep. 135-36.) Finally, Walls indicated that Bach had admitted to the assault of a Shawn Crider. (Markowski Dep. 68.) Walls was subsequently released from jail with the understanding that charges would be filed against her. (Drerup Dep. 85-86.)

### Bach's Arrest and Interview

Following the second interview with Walls, Drerup and Markowski arrested Bach later that day, without a warrant, and transported him to the Kettering Police Department. (Deposition of Paul Markowski ("Markowski Dep.") 73 Mar. 28, 2012; Drerup Dep. Ex. 2.) Bach was advised of his rights and told his arrest was in relation to the August 21, 2009 Walgreens robbery. (Markowski Dep. 74-76; Drerup Dep. Ex. 2.) Bach agreed to speak with the Detectives and consented to a search of his home. (Markowski Dep. 74-76, 81; Drerup Dep. Ex. 2.)

Initially, Bach was questioned on a previous assault that he was alleged to have

-5-

committed. (Drerup Dep. 107-09.) The interview then turned to the robbery. (Id.) Bach denied

any involvement in the Walgreens robbery and the search of his home produced no evidence

related to the crime. (Markowski Dep. 79-87, Drerup Dep. Ex. 2.)  Also, Bach was unable to

recall his whereabouts on the date and time of the robbery. (Id.)

After the search of the house Bach was living in, Markowski returned to the house that

same day to search a locked bedroom. (Drerup Ex. 2.) According to Terry Bach, Sr., Bach's

father, Markowski told Terry Bach, Sr. and Joanne Bach that "they had nothing on [Bach], they

knew he didn't do it, and they were going to let him go, and just wanted to scare him and get him

off the street for a while." (Affidavit of Terry Bach, Sr. ("Bach Sr. Aff.") ¶ 2 Aug. 17, 2012;

Affidavit of Joann Bach ("Joanne Bach Aff.") ¶ 5 Aug. 17, 2012.)

Bach also agreed to participate in a polygraph examination which was conducted the next

day. (Drerup Dep. 116-17, 123-25.) The polygraph examination was terminated because Bach

was not cooperating in the examination. (Drerup Dep. 123-25.) The results of the polygraph

examination were inconclusive. (Id.)

**Bach's Indictment and Trial**

Following the interview with Bach on September 3, 2009, Drerup prepared a

photographic line-up using a picture of Bach from his arrest earlier that day. (Ex. 2)  The line-up

was presented to eyewitness Peyton who positively identified Bach as the individual who robbed

the Walgreens store on August 21, 2012. (Exs. 2, 20.)

On September 4, 2012, based on Walls' account and Peyton's identification, Drerup and

Markowski presented the criminal charge against Bach to the Office of the Montgomery County

Prosecutor for approval. (Drerup Dep. 126-27.)  The prosecutor approved one count of

aggravated robbery and a warrant was issued for Bach's arrest. (Drerup Dep. Exs. 10-12.)

On September 11, 2009, a preliminary hearing was held before the Kettering Municipal Court which found probable cause existed to believe that Bach committed the robbery, set bond at $500,000 and bound Bach over to the Montgomery County Grand Jury. (Def. Mot. Summ. J. Ex I.)  Peyton was the only witness to testify at the hearing during which she positively identified Bach as the robber. (Id. at Ex. II.)

On September 29, 2009, Bach was indicted for aggravated robbery by the Montgomery County Grand Jury. (Bach Dep. Ex. E.)  Drerup and Walls testified on behalf of the state at the Grand Jury hearing. (Drerup Dep. 211, 254.)

Sometime after Bach's arrest, Joann Bach, Bach's step-mother, says she "personally" attempted to contact the detectives in charge of the investigation and received no return call. (Joann Bach Aff. ¶ 4.) She says that she and others had determined Bach's whereabouts on the day of the robbery and that he was at home at the time of the robbery and could not have gotten to the site of the robbery in time to do it. (Id. at ¶ 3.)

At the same time he was investigating the Walgreens robbery, Markowski was investigating robberies of other drugstores in the Dayton area. (Drerup Dep. 177-79; Markowski Dep. 130-33.) Although an individual confessed to three of the other robberies and had a similar build to Bach, both Markowski and Drerup did not think the confessor's method of operation was the same as that of the Walgreens robber. (Id.) Thus, Markowski and Drerup did not think that the confessor was the individual who robbed the Walgreens. (Id.)

Markowski and Drerup also listened to some of the phone calls Bach made while in jail. (Drerup Dep. 179-82; Markowski Dep. 142-43.) Drerup thought in one of the conversations that Bach and his father were trying to set up an alibi. (Drerup Dep. 180.) Also, Markowski recalls Bach and his father discussing suing "them" or saying "they are going to pay for this."

(Markowski Dep. 143.)

During the course of his prosecution, Bach hired video experts to tape a reenactment of the robbery and compare the reenactment by Bach to the video of the actual robbery. (Drerup Dep. 156-58.) Drerup and Markowski requested that Carl Suchomel ("Suchomel"), from the Miami Valley Communications Council, be present at the enactment to watch the experts hired by Bach and give his opinion on anything he felt they might be doing wrong. (Id. at 159.) Finally, during the reenactment, Terry Bach Sr. claims that he heard Drerup tell someone on his cell phone that, "[w]e better win this case or we are in deep shit." (Bach Sr. Aff. ¶ 3.)

When Drerup looked at the photographic comparisons prepared by Bach's video experts, he concluded that a viewer could not get an accurate foot placement of Bach because a rack of cloths was present and in the way on the day of the reenactment that was not present in the video of the actual robbery. (Id. at 250.) Suchomel later compared the photographs. (Deposition of Carl Frank Suchomel ("Suchomel Dep.") 35-40 May 29, 2012.) He first told Drerup that he did not think it was the same person. (Id.) He later told Drerup and the individual prosecuting Bach that he could not definitely say whether or not Bach was the same person in the reenactment photos and the photos of the actual robbery. (Id.)

The case proceeded to trial and resulted in a hung jury. (Markowski Dep. 148.) The Prosecuting Attorney subsequently dismissed the charges against Bach and the case was terminated on January 5, 2011. (Drerup Dep. Ex. 28.)

### Walls' Affidavit

On November 14, 2009, Walls swore in an Affidavit that she falsely implicated Bach "so the police would not pursue charges against [her]." (Drerup Dep. Ex. 27.) In April of 2010, Drerup, who was interviewing Walls in the Montgomery County Jail on another matter, told

Walls that "[n]ow is the time to tell the truth." (Id. at 226-27.) Walls responded, "No, I lied to Patrick Mulligan, wrote the false affidavit." (Id.) Walls told Drerup that she lied in the affidavit because she did not want to testify at trial and that she was afraid of Bach and his dad. (Id.) Walls also told Drerup that Bach offered to take care of her legal fees and then bought her a bus ticket and told her he wanted her out of town before his second trial. (Id.)

## BACH'S MOTION TO STRIKE DEFENDANTS' EXHIBIT G

Bach moves to strike Defendant's Exhibit G ("Def. Ex. G") to the Defendants' Reply to their Motion for Summary Judgment or to disregard it for the purposes of summary judgment. Bach argues Def. Ex. G is unsworn and constitutes inadmissible hearsay. The Defendants argue that Walls' statement is not introduced for the truth of the matter asserted, and striking thereof would improperly limit their ability to reply to Bach's argument.

An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated. Fed. R. Civ. P. 56(4)(c). "The proffered evidence need not be in admissible form, but its content must be admissible." *Bailey v. Floyd County Board of Education*, 106 F.3d 135, 145 (6th Cir. 1997).

Defendants' Ex. G appears to be an unauthenticated handwritten note, purporting to be made by Walls and contradicting her prior sworn affidavit given in November of 2009. In their Memorandum In Opposition to the motion to strike, the Defendants assert the statement was provided by Walls to Chief Inspector Greg Otto on December 19, 2009. The Defendants have not offered any other authenticating evidence, and do not contest the statement is unsworn. The Defendants, instead, contend the statement is not offered for the truth of the matter asserted but solely to rebut Walls' previous affidavit on which Bach relies.

-9-

Although the statement may be admissible in court for such a purpose, the Court has no basis to conclude the evidence is, or even could be, what it purports to be.  Therefore, Bach's Motion to Strike (Doc. #57) is GRANTED and Defendant's Exhibit G will be disregarded for purposes of summary judgment.

### LEGAL STANDARDS RELEVANT TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw.  Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)).  Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial*." Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact*. Id*. at 323.  The burden then shifts to the

nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id*.

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id*.

Finally, in ruling on a motion for summary judgment, "[a] district court is not… obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of

material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.  The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

### Section 1983 Claims

Bach has brought claims for violations of his Constitutional rights. These claims must be brought pursuant to 42 U.S.C. § 1983. Section 1983 makes liable individuals who, while acting under color of state law, deprive another individual of a right secured by the U.S. Constitution.

To establish a Section 1983 claim, a plaintiff must show (1) that he was deprived of a right secured by the U.S. Constitution or the laws of the United States and (2) that he was subjected to this deprivation by a person acting under color of state law. *Gregory v. Shelby County, Tenn*, 220 F.3d 433, 441 (6th Cir. 2000)(citing *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994)). In this case, there is no dispute that Drerup and Markowski were acting under color of state law. Thus, Bach must establish that he was deprived of a right secured by the U.S. Constitution or the laws of the United States.

### ANALYSIS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### Bach's Due Process Claims

Bach's First Claim for Relief for wrongful arrest, his Second Claim for Relief for unlawful prosecution and his Fifth Claim for Relief for retaliation for exercise of First Amendment rights are all brought, in part, for violation of the Substantive Due Process Clause. These claims are also brought for violation of other Constitutional Amendments.

Where a particular Constitutional Amendment "provides an explicit textual source of constitutional protection against a particular sort of government behavior," that Amendment, and

not the more generalized notion of substantive due process, is used to analyze the claims.

*Albright v. Oliver*, 510 U.S. 266, 273 (1994)(citing *Graham v. Connor*, 490 U.S. 386, 395

(1989)). Thus, Bach's wrongful arrest, also termed false arrest, claim is analyzed under the

Fourth Amendment. *See United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008). Also,

Bach's unlawful prosecution, also termed malicious prosecution, claim is analyzed under the

Fourth Amendment. *See Johnson v. Ward*, 43 F. App'x 779, 782 (6th Cir. 2002). Finally, Bach's

First Amendment retaliation claim is analyzed under the First Amendment.

### Bach's Wrongful Arrest Claim

Bach's First Claim for Relief is for wrongful arrest. To prove a wrongful arrest claim

under federal law, Bach must prove that Drerup and Markowski lacked probable cause to arrest

him. *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011).

Probable cause exists if the facts and circumstances within the arresting officer's

knowledge were sufficient to warrant a prudent man in believing that the individual being

arrested had committed or was committing an offense. *Id.*(citing *Pyles v. Raisor*, 60 F.3d 1211,

1215 (6th Cir. 1995). Further, whether probable cause exists is based upon the facts known to the

officers at the time of the arrest. *Id.*(citing *United States v. Pearce*, 531 F.3d 374, 380-81 (6th

Cir. 2008). In addition, the validity of an arrest does not depend upon whether the suspect

actually committed the crime or was later acquitted. *Michigan v. DeFillippo*, 443 U.S.31, 36

(1979). Finally, the existence of probable cause in a § 1983 action is generally a jury question

unless there is only one reasonable determination possible. *Green v. Throckmorton*, 681 F.3d

853, 865 (6th Cir. 2012)(citing *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008)).

On September 3, 2009, Bach was arrested without a warrant by Drerup and Markowski

for the aggravated robbery of the Walgreens store at 2140 East Dorothy Lane, Kettering, Ohio.

At the time Bach was arrested, Drerup and Markowski had Walls' statement implicating Bach and providing remarkably specific details of the alleged robbery. Walls also identified Bach in a video of the robbery. Drerup and Markowski also visited Walls a second time when she essentially repeated her statements and added details. Also, Drerup and Markowski reviewed Bach's criminal history file and confirmed that Bach's physical characteristics, with the exception of a height discrepancy, substantially matched the physical characteristics of the suspected robber. Finally, Bach was found at a residence where Drerup and Schomberg had arrested Walls two days earlier.

Bach argues that Walls was not credible and was coerced. Bach also argues that two eyewitnesses were unable to identify him. Finally, Bach argues that there was a height discrepancy between him and the suspected robber. However, these arguments are without merit.

Walls later recanted her statement that Bach committed the aggravated robbery but her recantation was long after Bach's arrest. Further, there is evidence that no promises were made to Walls in exchange for her statement, and Walls was subsequently released from jail with the understanding that charges would be filed against her.

As for the eyewitnesses, neither Garress or Hughes could identify Bach because they were scared at the time of the robbery and looked down instead of looking at the suspect's face. (Id.) As for the height discrepancy, Drerup noted a difference in height of several inches between what the police report of the robbery said and what was in Bach's criminal history file, however, there were similarities in that Bach was a white male, had brown hair and had a thin build. (Id.)

In sum, the facts and circumstances within Drerup's and Markowski's knowledge were sufficient to warrant a prudent man in believing that Bach had committed the aggravated robbery of the Walgreens store at 2140 East Dorothy Lane, Kettering, Ohio. Further, this is the only

reasonable determination possible. Therefore, there are no genuine issues of material fact and Drerup and Markowski are entitled to judgment as a matter of law on Bach's wrongful arrest claim.

### Bach's Unlawful Prosecution Claim

In his Second Claim for Relief, Bach alleges that he was unlawfully prosecuted for the robbery of the Walgreens store at 2140 East Dorothy Lane, Kettering, Ohio. The Defendants respond that they did not unlawfully prosecute Bach.

The Sixth Circuit recognizes a federal claim of malicious prosecution under the Fourth Amendment where a plaintiff alleges that the defendants wrongfully investigated, prosecuted, convicted and incarcerated him. *Thacker v. City of Columbus*, 328 F.3d 244, 258-59 (6th Cir. 2003)(citing *Spurlock v. Satterfield*, 167 F.3d 995, 1005-07 (6th Cir. 1999)). To satisfy a malicious prosecution claim, at a minimum, a plaintiff must show that there was no probable cause to justify the prosecution. *Id.* at 259.

Bach alleges that several stages of his prosecution were unlawful, including his initial arrest, which is addressed above, the subsequent investigation, his indictment and the investigation prior to his trial. Each will be addressed seriatim.

### Stages of Bach's Prosecution

#### Investigation Subsequent To Initial Arrest and Prior To Indictment

Bach was arrested on September 3, 2009. During an interview after his arrest, Bach denied any involvement in the Walgreens robbery and the search of his home produced no evidence related to the crime. Bach was unable to recall his whereabouts on the date and time of the robbery. Bach also agreed to participate in a polygraph examination, the results from which were inconclusive. The polygraph examination was terminated because Bach was not

-15-

cooperating in the examination.

Following the interview with Bach on September 3, 2009, Drerup prepared a photographic line-up using a picture of Bach from his arrest earlier that day. The line-up was presented to eyewitness Peyton who positively identified Bach as the individual who robbed the Walgreens.

On September 4, 2009, based on Walls' account and Peyton's identification, Drerup and Markowski presented the criminal charge against Bach to the Office of the Montgomery County Prosecutor for approval.  The prosecutor approved one count of aggravated robbery and issued a warrant for Bach's arrest.

On September 11, 2009, a preliminary hearing was held before the Kettering Municipal Court which found probable cause existed to believe that Bach committed the robbery, set bond at $500,000 and bound Bach over to the Montgomery County Grand Jury. Peyton was the only witness to testify at the hearing and she positively identified Bach as the robber.

There is no Rule 56 evidence to suggest that Bach was prevented from challenging the Kettering Municipal Court's probable cause finding. In fact, Bach was represented by counsel at this hearing, and Bach's counsel cross-examined Peyton and elected to not present any other evidence.

Further, there is no Rule 56 evidence to suggest that Drerup or Markowski misrepresented any facts or falsified any evidence presented at the preliminary hearing before the Kettering Municipal Court.[2] As a result, since the Kettering Municipal Court did not rely upon Drerup's or Markowski's testimony in finding probable cause, Bach cannot now argue that

---

[2]During this hearing, Peyton specifically denied that Drerup or the prosecutor influenced or coerced her into identifying Bach. (Def. Mot. Summ. J. Ex. II.)

false or coerced evidence was used to establish probable cause. *See Molnar v. Care House*, 359 F. App'x 623, 627 (6th Cir. 2009); *Buttino v. City of Hamtrack*, 87 F. App'x 499, 504-05 (6th Cir. 2004). Thus, there are no genuine issues of material fact and probable cause existed to bind Bach over to the Grand Jury.

Indictment

On September 29, 2009, Bach was indicted by the Montgomery County Grand Jury for the robbery. It is well established that the finding of an indictment, fair upon its face, by a properly constituted Grand Jury conclusively determines the existence of probable cause. *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2000)(citing *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)).

In this case, the evidence presented to the Grand Jury is not before the Court. However, based upon Drerup's deposition, Bach claims that only Drerup and Walls testified before the Grand Jury. Bach further argues that Drerup withheld exculpatory evidence from the Grand Jury, and Walls' credibility is questionable.

As an initial matter, Drerup did not testify in his deposition that only he and Walls testified before the Grand Jury. Drerup said that he testified. When asked whether he knew if anyone else testified, Drerup responded that he believed that Walls also testified. Drerup did not testify in his deposition that the Grand Jury had only his and Walls' testimony as evidence. Presumably, the Grand Jury also had the probable cause finding from the Kettering Municipal Court.

In any event, Bach has not identified what evidence that Drerup and Walls presented to the Grand Jury, and, as indicated above, the evidence presented to the Grand Jury is not before the Court. Therefore, there is no genuine issue of material fact and Bach has not shown that

-17-

probable cause did not exist for his indictment by the Grand Jury.

Investigation Prior To Trial

After being indicted, Bach was tried for aggravated robbery. On January 6, 2011, after the Trial resulted in a hung jury, the aggravated robbery charge against Bach was dismissed by the prosecutor. There is no Rule 56 evidence before the Court regarding what evidence was or was not presented to the Jury, and Bach's arguments regarding the integrity of the investigation prior to trial are addressed below.

**Bach's Arguments Regarding the Integrity of the Process**

Bach now offers several arguments that question the integrity of the process leading to his Trial. First, Bach argues that his prosecution was caused by the initial false arrest. However, as determined above, Drerup and Markowski had probable cause for the initial warrantless arrest, and there was probable cause to arrest Bach after the probable cause hearing conducted by the Kettering Municipal Court. Thus, there was no initial false arrest.

Bach next argues that certain exculpatory evidence was not presented. The exculpatory evidence specifically identified by Bach is the credibility of Walls' statements, the height discrepancy between him and the reported height of the robber, the fact that two eyewitnesses could not identify him, that he allegedly had an alibi, and the alleged admission by Markowski to Terry Bach, Sr. that the police knew that Bach was not the robber. Each of these alleged exculpatory issues will be address seriatim.

Walls' Credibility

In September of 2009, Walls twice identified Bach as the robber and provided details of the robbery, and there is no evidence of any promises made to Walls in return for her identification of Bach. In November of 2009, after Bach's indictment, Walls swore in an

-18-

Affidavit that she falsely implicated Bach. Walls later told Drerup that she lied in this later Affidavit because she did not want to testify at trial and that she was afraid of Bach's father.

While there may have been cause to question Walls' credibility, at least beginning in November of 2009, Drerup and Markowski had the eyewitness identification by Peyton and thus had probable cause to proceed. Walls' credibility was irrelevant.

Height Discrepancy

Bach next argues that his prosecution was flawed because there was a height discrepancy between him and the description of the robber in the police report of the robbery. The police report from the robbery describes the suspect as 5'3'' to 5'5" tall. Bach is allegedly several inches taller.

First, only one eyewitness included a height in her statement, that being 5'5" tall. Also, the witnesses reported the suspect as "scrunched over the counter and leaning up against the wall" making a height determination difficult. Second, the remaining physical characteristics identified by the eyewitnesses matched Bach's. Finally, Peyton specifically identified Bach as the robber.

In preparation for his Trial, Bach hired video experts to tape a reenactment of the robbery. When Drerup compared to photographs prepared by Bach's video expert, he concluded that a viewer could not get an accurate foot placement of Bach because a rack of clothes was present and in the way on the day of the reenactment that was not present in the video of the actual robbery. In addition, an individual present for the reenactment at Drerup's request first told Drerup that he did not think it was the same person and later told Drerup and the prosecutor that he could not definitely say whether or not Bach was the same person when comparing the reenactment and the actual video. However, while there may arguably have been a few-inch

-19-

height discrepancy between the estimated height in the police report of the robbery and Bach's actual height, Drerup, Markowski and the prosecutor had plenty of other physical description evidence to continue to prosecute Bach.

### Eyewitness Identification

Bach argues that two of the eyewitnesses could not identify him as the robber. Two of the three eyewitnesses to the robbery could not identify Bach because they said they were looking down and not at the face of the robber. The third eyewitness did, however, positively identify Bach. This is enough eyewitness evidence to continue to prosecute Bach.

### Alibi

Although he did not remember where he was at the time of the robbery, Bach now identifies alleged alibi evidence in two forms. First, he alleges that Drerup and Markowski were investigating other drug store robberies and had suspects, other than him, in those cases. However, although the individual that confessed to three of the other robberies had a similar build to Bach, Drerup and Markowski did not think the other robber's method of operation matched that of the individual that robbed the Walgreens.

The other alleged alibi evidence identified by Bach is his step-mother's assertion that she had determined that Bach was home alone on the day of the robbery and could not have gotten to the site of the robbery in time to do it. This statement is, of course incomplete and self-serving, but, more importantly, there is no evidence that this statement was ever provided to Drerup or Markowski. Thus, Drerup, Markowski and the prosecutor did not have reason to believe that Bach had an alibi for the robbery.

### Markowski's Admission

In an Affidavit, Terry Bach, Sr. attests that Markowski told him that the police knew that

Bach was not the robber. Bach has identified no other evidence that the police knew that he was not the robber and there is ample evidence that the police thought Bach was the robber. Terry Bach Sr.'s statement is, of course, self-serving and hearsay, but, more importantly, it is not supported by the other Rule 56 evidence.

In sum, Bach has not identified any reliable exculpatory evidence. If the evidence identified by Bach could be considered exculpatory, he has not identified evidence that it was withheld from his prosecution.

Bach also argues that incomplete evidence was given to the prosecutor. However, the only Rule 56 evidence available to the Court on this issue is that Drerup and Markowski presented everything that they had to the prosecutor. This argument, too, is without merit.

Bach's final argument is that he was not given a full and fair opportunity to oppose the probable cause for his arrest. However, the Rule 56 evidence before the Court indicates otherwise. Bach was represented by counsel at the probable cause hearing and his counsel elected to not present any evidence.

The Parties make much of the applicability of res judicata in this case. However, res judicata need not be considered. Drerup, Markowski and the prosecutor had probable cause to prosecute Bach at each stage of Bach's prosecution.

Thus, Bach has not presented evidence that the integrity of his prosecution was unconstitutional. There are no genuine issues of material fact and Drerup and Markowski are entitled to judgment as a matter of law on Bach's claim for unlawful prosecution.

### Bach's Retaliation Claim

Bach's Fifth Claim for Relief is for retaliation against him for the exercise of his First Amendment rights. Therein, Bach alleges that one or more named and unnamed defendants have

harassed, slandered, and otherwise made false/unfounded accusations against him. He also alleges that the named and unnamed defendants have entered his property to retaliate against him for the filing of this lawsuit. However, the only remaining named defendants are Drerup and Markowski. The John/Jane Does have not been identified and the City of Kettering has been dismissed. Further, Bach has not identified Rule 56 evidence that Drerup or Markowski have retaliated against him. Therefore, there are no genuine issues of material fact and Drerup and Markowski are entitled to judgment as a matter of law on Bach's Fifth Claim for Relief for retaliation against him for the exercise of his First Amendment rights.

**Qualified Immunity**

Drerup and Markowski argue that, even if Bach could maintain a § 1983 claim, which he cannot, they are nevertheless entitled to qualified immunity. Bach responds that Drerup and Markowski are not entitled to qualified immunity.

Government officials performing discretionary functions, such as Drerup and Markowski, are entitled to qualified immunity from § 1983 actions so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The question is not the subjective good or bad faith of the public official, but the "objective legal reasonableness" of the public official's action in light of clearly established law at the time the public official acted. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Qualified immunity is granted if the plaintiff cannot establish each of three elements: (1) whether, based upon the applicable law, the facts viewed in a light most favorable to the plaintiff, a constitutional violation has occurred; (2) whether the constitutional violation involved a clearly established constitutional right of which a reasonable person would have known; and

-22-

(3) whether the plaintiff has offered sufficient evidence to indicate what the public official allegedly did was objectively unreasonable in light of the clearly established constitutional right. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005)(citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)); *Williams ex rel. Allen v. Cambridge Board of Education*, 370 F.3d 630, 636 (6th Cir. 2004).

Reasonably well-trained police officers, such as Drerup and Markowski, are presumed to know clearly established constitutional rights. Anderson, 483 U.S. at 640. Also, a grant of qualified immunity is inappropriate where there is a factual dispute on which the question of immunity turns. *Brandenburg v. Cureton*, 882 F.2d 211,216 (6th Cir. 1989).

Bach alleges that he was wrongfully arrested and maliciously prosecuted by Drerup and Markowski. Both wrongful arrest and malicious prosecution are forbidden by the Fourth Amendment to the U.S. Constitution. The test for both is probable cause, and, as determined above, Drerup and Markowski had probable cause to arrest and prosecute Bach.

Therefore, even when viewing the Rule 56 evidence in a light most favorable to himself, Bach cannot establish that a constitutional violation has occurred. As a result, Drerup and Markowski are entitled to qualified immunity.

## SUMMARY

Bach's Motion To Strike Defendants' Exhibit G (doc. #54) is granted. Defendants' Exhibit G, an unauthenticated handwritten note purportedly by Walls and purporting to contradict one of her prior Affidavits, is not considered for purposes of Defendants' Motion for Summary Judgment.

Bach's Due Process claims are analyzed using the First and Fourth Amendments and not the Due Process Clause. The First and Fourth Amendments provide the more explicit sources of

constitutional protection sought by Bach.

Bach's wrongful arrest and unlawful prosecution claims fail because Drerup and Markowski had probable cause to arrest Bach without a warrant and to continue to prosecute him after his initial arrest. Bach's First Amendment retaliation claim fails because Bach has not identified evidence that Drerup or Markowski retaliated against him. Bach's punitive damages claim fails because he has established no violations on which to base punitive damages. Finally, Bach's municipal liability claim is no longer justicable because he has dismissed the City of Kettering.

Therefore, there are no genuine issues of material fact and Drerup and Markowski are entitled to judgment as a matter of law on all of Bach's claims against them. Drerup's and Markowski's Motion for Summary Judgment (doc. #37) is granted. Even if summary judgment on Bach's claims was not granted, Drerup and Markowski are entitled to qualified immunity. Finally, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio this Fourteenth Day of January, 2013.

**s/Thomas M. Rose**

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

-24-